1

2

3

4

5

6

7

# UNITED STATES DISTRICT COURT

8

## DISTRICT OF NEVADA

9

**\* \* \***

10

11

12

13

14

15

16

17

18

| KATHLEEN GORRELL and DANIEL GORRELL, | ) | Case No.: 2:08-cv-01757-RLH-RJJ |
|---|---|---|
| | ) | |
| Plaintiffs, | ) | **O R D E R** |
| | ) | |
| vs. | ) | (Motion for Summary Judgment–#20; Motion to Bifurcate–#21) |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation authorized to do business in Nevada; DOES I through X and ROE CORPORATIONS or Business Entities I through X, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

19

20       Before the Court is Defendant State Farm Mutual Automobile Insurance

21   Company's **Motion for Summary Judgment** (#20), filed February 22, 2010.  The Court has also

22   considered Plaintiffs Kathleen and Daniel Gorrell's Opposition (#27), filed March 10, 2010, and

23   State Farm's Reply (#37), filed May 7, 2010.

24       Also before the Court is State Farm's **Motion to Bifurcate Trial** (#21), filed

25   February 22, 2010.  The Court has also considered Plaintiffs' Opposition (#26), filed March 10,

26   2010, and State Farm's Reply (#32), filed March 22, 2010.

1

AO 72
(Rev. 8/82)

1

**BACKGROUND**

2      On October 8, 2006, Plaintiffs, who are residents of Wyoming, were waiting at a

3  stoplight in Las Vegas, Nevada in their Ford F-250 truck.  While waiting for the light to turn

4  green, a Nevada driver who was operating his vehicle under the influence of alcohol struck the

5  front of Plaintiffs' truck.  The paramedics came to the scene, but Plaintiffs declined medical

6  treatment.  The next day, Plaintiffs drove their truck back to their home in Rock Springs,

7  Wyoming.

8      Plaintiffs suffered soft tissue injuries to their backs and necks as a result of this

9  accident.  Upon their arrival in Wyoming, Plaintiffs sought chiropractic treatment for their injuries.

10  Although both Plaintiffs have a history of neck and back problems, State Farm determined that the

11  automobile accident exacerbated these problems and agreed to pay "reasonable medical expenses"

12  caused by the accident as required by the medical coverage provision of their insurance agreement

13  with Plaintiffs. (Dkt. #29, Mot. 17.)  Plaintiffs received chiropractic treatment in Wyoming from

14  Dr. Steffensmeier starting in October 2006 and continuing for approximately one year.  After

15  reviewing Plaintiffs' medical records and doctors' notes (all of which will be discussed below),

16  State Farm sent a letter to Plaintiffs in August 2007 informing them it would no longer pay for

17  their medical bills because additional chiropractic treatment was not reasonable under the

18  insurance policy.  Despite receiving this information, Plaintiffs continued to receive chiropractic

19  treatment for their soft tissue injuries.

20      On November 24, 2008, Plaintiffs filed suit in Nevada state court alleging claims

21  against State Farm for (1) breach of contract; (2) breach of the covenant of good faith and fair

22  dealing; (3) violation of Nevada's Unfair Claims Practices Act, NRS 686A.300; (4) quantum

23  meruit; (5) bad faith; (6) negligent misrepresentation; and (7) punitive damages.  State Farm

24  subsequently removed this case based on the diversity of the parties.  Now before the Court is

25  State Farm's motion for summary judgment and its motion to bifurcate the trial.  For the reasons

26  /

AO 72
(Rev. 8/82)

1    discussed below, the Court grants State Farm's motion for summary judgment and denies as moot

2    its motion to bifurcate.

3                                                    **DISCUSSION**

4    **I.      Legal Standard**

5              A court will grant summary judgment if "the pleadings, the discovery and

6    disclosure materials on file, and any affidavits show there is no genuine issue as to any material

7    fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An

8    issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could

9    find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit

10   under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  In

11   evaluating a motion, a court views all facts and draws all inferences in the light most favorable to

12   the nonmoving party. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).

13             The movant bears the burden of showing that there are no genuine issues of

14   material fact. *Id.*  "In order to carry its burden of production, the moving party must either produce

15   evidence negating an essential element of the nonmoving party's claim or defense or show that the

16   nonmoving party does not have enough evidence of an essential element to carry its ultimate

17   burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102

18   (9th Cir. 2000).  Once the movant satisfies the requirements of Rule 56, the burden shifts to the

19   party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial."

20   *Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving

21   party "may not rely on denials in the pleadings but must produce specific evidence, through

22   affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps.,*

23   *Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some

24   metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S.

25   574, 586 (1986).

26   /

AO 72
(Rev. 8/82)

1  **II.     Motion for Summary Judgment**

2           Before considering Plaintiffs' claims, the Court addresses the parties' dispute

3  regarding which law applies to this case.

4           **A.     Wyoming vs. Nevada Law**

5           State Farm argues that Wyoming law applies to this case, while Plaintiffs claim

6  Nevada law controls.  This dispute is relevant because Plaintiffs' claim for unfair claims practices

7  arises under Nevada statutory law.  Federal courts sitting in diversity apply the forum state's

8  choice-of-law rules. *Rio Props. Inc. v. Stewart Annoyances, Ltd.*, 420 F. Supp. 2d 1127, 1130–31

9  (D. Nev. 2006).  The Nevada Supreme Court has held that in insurance coverage disputes, Nevada

10 courts should apply the law of the state that has the most substantial relationship to the insurance

11 transaction. *Sotirakis v. USAA*, 787 P.2d 788, 790 (Nev. 1990).  In making this determination,

12 courts look to the following factors: (1) the place of contracting; (2) the place of negotiation of the

13 contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5)

14 the domicile, residence, nationality, place of incorporation, and place of business of the parties.

15          These factors all weigh in favor of applying Wyoming law to this case.  Plaintiffs

16 negotiated and purchased their insurance contract with State Farm in Wyoming; the performance

17 of the contract—State Farm's handling claims and payment of medical bills—took place in State

18 Farm's Wyoming offices; Plaintiff's truck was licensed, registered, and stored in Wyoming; and

19 Plaintiffs reside in Wyoming.  Given these undisputed facts, the Court concludes that Wyoming

20 law governs this dispute.  Because Wyoming law applies to this case, Plaintiffs' cause of action for

21 unfair claims practices under NRS 686A.300 fails as a matter of law.  The Court therefore

22 dismisses this claim and addresses Plaintiffs' remaining claims under Wyoming law.

23          **B.     Breach of Insurance Contract and Breach of the Implied Covenant of Good
           Faith and Fair Dealing**

24

           State Farm alleges it is entitled to summary judgment on Plaintiffs' claim for

25

26 breach of insurance contract and breach of the implied covenant of good faith and fair dealing

AO 72
(Rev. 8/82)

1   because no genuine factual dispute exists regarding whether State Farm was obligated under the

2   insurance contract to continue paying for Plaintiffs' chiropractic treatment.

3          **1.     Plaintiffs' Treatment History**

4          In addressing this assertion, the Court first outlines the relevant factual information

5   regarding the nature and extent of Plaintiffs' chiropractic treatment.  Shortly following their

6   automobile accident in October 2006, Plaintiffs began receiving chiropractic treatment from Dr.

7   Steffensmeier, a chiropractor in Wyoming, and continued receiving treatment for approximately

8   one year.  On December 29, 2006, after having provided insurance payments for two months of

9   chiropractic care, State Farm sent a letter to Dr. Steffensmeier asking him to provide a written

10  update regarding Plaintiffs' condition, their future treatment plan, and the anticipated date they

11  would reach maximum medical improvement ("MMI").  Dr. Steffensmeier responded to this

12  request and informed State Farm in a letter that Plaintiffs (1) suffered soft tissue damage as a result

13  of the car accident; (2) would both need treatment once a week; and (3) would each reach MMI by

14  July 1, 2007.  (Dkt. #20, Mot. Ex. H.)

15         After receiving Dr. Steffensmeier's response and reviewing Plaintiffs' files (which

16  indicated their prior history of back and neck problems), State Farm decided to retain an

17  independent medical expert to review Plaintiffs' records.  State Farm subsequently hired Daniel R.

18  Staight, another Wyoming chiropractor, to review Plaintiffs' medical records and give an opinion

19  regarding Plaintiffs' condition and proposed future treatment.  On August 6, 2007, after having

20  reviewing the records from Plaintiffs' fifty-plus visits to Dr. Steffensmeier, Dr. Staight issued a

21  report in which he concurred with Dr. Steffensmeier regarding the general diagnosis and course of

22  treatment of Plaintiffs' soft tissue injuries.  However, Dr. Staight disagreed in part with Dr.

23  Steffensmeier regarding the date of MMI for Plaintiffs.  Although Dr. Staight agreed with Dr.

24  Steffenmeier's determination that Kathleen Gorrell reached MMI on July 1, Dr. Staight stated that

25  Daniel reached MMI after his June 13, 2007 session with Dr. Steffensmeier.

26  /

AO 72
(Rev. 8/82)

1    In August 2007, State Farm sent Plaintiffs and their medical providers a letter

2 indicating that chiropractic services were no longer medically necessary under the insurance policy

3 and that State Farm would not continue making payments.  Nonetheless, and despite the fact that

4 both doctors agreed that Plaintiffs reached or would reach MMI no later than July 1, 2007,

5 Plaintiffs continued to receive chiropractic treatment from Dr. Steffensmeier.

6                              **2.        Plaintiffs' Contractual Claims**

7    The Court finds State Farm is entitled to summary judgment on Plaintiffs' claim for

8 breach of contract because the uncontroverted evidence indicates that State Farm was not obligated

9 to continue making payments for Plaintiffs' chiropractic treatment.  The Court comes to this

10 conclusion for two reasons.  First, Plaintiffs' treating chiropractor and an independent chiropractor

11 both agree that Plaintiffs would reach or had already reached MMI on July 1.  Dr. Steffensmeier,

12 who had already been treating Plaintiffs for almost three months, concluded that Plaintiff would

13 reach MMI by July 1, and Dr. Staight, after reviewing Plaintiffs' medical records, concluded in

14 August that both Plaintiffs had reached MMI by July 1.  Second, Plaintiffs have brought forth no

15 evidence to indicate that Dr. Steffensmeier or Dr. Staight's conclusions were inaccurate or that

16 Plaintiffs have not in fact reached MMI.  As the plaintiffs in this case, the Gorrells bear the burden

17 of providing evidence to support their breach of contract claim.  Plaintiffs have not carried this

18 burden: instead of bringing forth credible evidence to refute the medical testimony regarding their

19 condition or to indicate that they required additional treatment, they have done little more than

20 allege that State Farm should have continued to cover their chiropractic treatments.  In light of Dr.

21 Steffensmeier and Dr. Staight's conclusions, Plaintiffs' failure to provide this evidence is fatal to

22 their claim.  Accordingly, the Court grants State Farm's motion for summary judgment on

23 Plaintiffs' breach of contract claim.

24    The Court also grants State Farm's motion for summary judgment as to Plaintiffs'

25 claim for breach of the implied covenant of good faith and fair dealing.  Under Nevada law,

26 "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance

AO 72
(Rev. 8/82)

1    and execution." *A.C. Shaw Constr. v. Washoe County*, 784 P.2d 9, 9 (Nev. 1989) (quoting

2    Restatement (Second) of Contracts § 205).  Thus, a party can be liable for breach of the covenant

3    of good faith and fair dealing "[w]hen [it] performs a contract in a manner that is unfaithful to the

4    purpose of the contract" or otherwise acts in bad faith.  *Hilton Hotels v. Butch Lewis Prods.*, 808

5    P.2d 919, 923 (Nev. 1991).

6           The Court grants summary judgment on Plaintiffs' claim for breach of this duty for

7    the same reason it grants summary judgment on their claim for breach of contract.  The

8    uncontroverted evidence, including the medical opinion of Plaintiffs' treating chiropractor,

9    indicates that Plaintiffs reached MMI on or before July 1, 2007.  Consequently, the Court finds

10   that no factual dispute exists regarding whether State Farm acted in bad faith when it determined

11   that Plaintiffs were not entitled to additional insurance coverage under their insurance policy.  The

12   Court therefore grants State Farm's motion for summary judgment on Plaintiffs' claim for breach

13   of the implied covenant of good faith and fair dealing.

14          **C.    Non-Contractual Claims**

15          Because the Court finds State Farm was not required under the terms of the

16   insurance policy to continue paying for Plaintiffs' chiropractic treatment, Plaintiffs' non-

17   contractual claims—all of which stem from State Farm's allegedly wrongful refusal to render

18   payment—also fail as a matter of law.  Since State Farm complied with its obligations under the

19   insurance contract, it cannot be liable to Plaintiffs for quantum meruit, bad faith, negligent

20   misrepresentation, or punitive damages.  Accordingly, the Court grants State Farm's motion for

21   summary judgment as to these claims.

22   **III.   Motion to Bifurcate**

23          State Farm's motion to bifurcate the trial is now moot because the Court has

24   granted State Farm's motion for summary judgment in its entirety.  Accordingly, the Court denies

25   this motion as moot.

26   /

AO 72
(Rev. 8/82)

1
**CONCLUSION**

2
Accordingly, and for good cause appearing,

3
IT IS HEREBY ORDERED that Defendant State Farm Automobile Insurance

4
Company's Motion for Summary Judgment (#20) is GRANTED.

5
IT IS FURTHER ORDERED that State Farm's Motion to Bifurcate (#21) is

6
DENIED as moot.

7
The Clerk of the Court is ordered the close this case.

8
Dated: June 25, 2010.

9

10
_____

11
**ROGER L. HUNT**
**Chief United States District Judge**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

AO 72
(Rev. 8/82)